UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES T. BROCKMAN, M.D.,<br><br>                        Plaintiff,<br><br>v.<br><br>STANLEY FRIEDMAN, individually; and DOES 1-10, inclusive,<br><br>                        Defendants. | Case No.: 23-CV-0162-GPC<br><br>**ORDER**<br>**(1) DENYING DEFENDANT'S MOTION FOR SANCTIONS**<br>**(2) AWARDING DEFENDANT COSTS UNDER FED. R. CIV. P. 41(d)**<br><br>**[ECF No. 10]** |

      Before the Court is Defendant Stanley Friedman's Motion for Sanctions against Plaintiff James T. Brockman and Plaintiff's Counsel. ECF No. 10. Brockman filed a response in opposition, ECF No. 12, and Friedman filed a reply, ECF No. 13. The Court finds the matter appropriate for decision without oral argument and VACATES the hearing previously scheduled for Friday, May 5, 2023. *See* Civ. L. R. 7.1.d.1. For the reasons that follow, the Court **DENIES** Friedman's Motion for Sanctions but awards Friedman costs for the earlier action pursuant to Federal Rule of Civil Procedure 41(d).

1

## I. PROCEDURAL BACKGROUND

On November 18, 2022, Brockman filed a state court action in the San Diego Superior Court of California alleging fraud, conversion, and intentional infliction of emotional distress regarding Friedman's alleged misrepresentations when selling a Porsche automobile to Brockman. ECF No. 12-2 at 13–14.[1] On December 16, 2022, Friedman removed the matter to federal court pursuant to 28 U.S.C. § 1441(b) and filed a Motion to Transfer to the District Court for the Northern District of Illinois shortly thereafter. Case No. 3:22-cv-2002-GPC-AGS ECF No. *1, *2.[2] On January 10, 2023, Brockman filed a voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). ECF No. *4.

On January 11, 2023, Brockman filed effectively the same action in the San Diego Superior Court, replacing the intentional infliction of emotional distress claim with a claim for unjust enrichment and making a more specified monetary damages request. *Compare* ECF No. 12-2 at 12–15 (November 2022 complaint), *with* ECF No. 12-2 at 17, 20–21 (January 2023 complaint). Friedman again removed the case to federal court and filed a Motion to Transfer to the Northern District of Illinois. ECF No. 1, 4. On February 22, 2023, Brockman filed another Notice of Voluntary Dismissal of Action pursuant to Rule 41(a)(1)(A)(i). ECF No. 8.

The Court issued an order instructing the Clerk to close the case and noting that, regardless of how Brockman framed his notice of voluntary dismissal, pursuant to Rule 41(a)(1)(B) Brockman's second Voluntary Dismissal of Action operated as an adjudication on the merits. ECF No. 9 at 2.

---

[1] Pages numbers are based on CM/ECF pagination.

[2] Citations to the docket for Case No. 22-cv-2002 are denoted with an asterisk (*). Otherwise, the citation is to the docket for Case No. 23-cv-162.

## II.     FACTUAL BACKGROUND

### A.     Vehicle Purchase Logistics

Friedman's late wife, Monique Friedman, owned a 2009 Porsche 911 automobile from 2009 until her death on August 9, 2022. ECF No. 10-1 at 34; *see also* ECF No. 12-1 at 6 (vehicle history report). Friedman states that on September 15, 2022, as successor-in-interest for the vehicle, he transferred both title and the physical vehicle to car dealers Napleton Cadillac, Inc. ("Napleton") and Steve Foley Cadillac, Inc. ("Foley"). ECF No. 10-1 at 34.

Brockman first noticed the vehicle for sale online "[i]n or about October 2022," with Napleton listed as the merchant. ECF No. 12 at 5; ECF No. 10-1 at 34. Brockman contends that Napleton represented that Friedman owned the vehicle "and that Napleton was managing the transaction and paperwork on Friedman's behalf." ECF No. 12 at 5. Conversely, Friedman asserts that he was not the "real seller" of the vehicle in October 2022 given his previous title transfer. ECF No. 10-1 at 26–27; *see also* ECF No. 10-1 at 50 (identifying Napleton as "The Seller").

Brockman also alleges that Napleton misrepresented that the vehicle had not had any body work or paint work done. ECF No. 12-1 at 2. Only after the vehicle was delivered to Brockman's California address several weeks after the purchase date did he realize that the paint job was much worse than represented. ECF No. 12 at 6; ECF No. 1 at 11; *see* ECF No. 10-1 at 50 (sales agreement with purchaser address).

### B.     Amount in Controversy

Brockman purchased the vehicle for $109,391.37, per an "AS IS/AS SOLD" contract inclusive of an arbitration agreement. ECF No. 10-1 at 12–13, 50–58. However, because of Napleton's alleged misrepresentations, Brockman contends that Friedman is liable for $30,000–$40,000, which is the price difference between what Brockman paid and what Brockman estimates the vehicle is worth. ECF No. 12 at 7. According to

Brockman, the requested relief of the price difference forecloses removal to federal court on the basis of diversity jurisdiction. ECF No. 12 at 8.

Before filing the complaint, Brockman purportedly offered to "unwind the deal and return the vehicle in exchange for a return of his money." ECF No. 1 at 12. Under his claim for fraud, Brockman alleges that "[a]bsent the false representations, [he] would not have purchased the Automobile, or would not have purchased at the final agreed upon price." ECF No. 1 at 12. Under his claim for conversion, Brockman alleges that Friedman "wrongfully obtained money from [Brockman] as a result of . . . misrepresentation," and has refused to return that money to Brockman in exchange for the return of the vehicle. ECF No. 1 at 13. Friedman contended that Brockman's allegations of seeking to "unwind" a payment of more than $100,000 for the vehicle; being induced to purchase the vehicle due to false representations; and conversion of $100,000 satisfied the amount in controversy requirement. *See* ECF No. 1 at 3.

### C. Diversity of Citizenship

Brockman purportedly resided in San Diego, California at the time of the sale, ECF No. 1 at 9, and Friedman's primary place of residence is in Illinois, ECF No. 10-1 at 9. Brockman's vehicle records suggest that it was "exclusively maintained in San Diego County from 2011 until September 2022," ECF No. 12-1 at 7–10, and Counsel determined that Friedman owned and resided at a property "in Rancho Santa Fe for large portions of the year," ECF No. 12-2 at 2. Conversely, Friedman's driver's license, voter registration, and income tax returns demonstrate that he was and is an Illinois resident—establishing

diversity of citizenship. ECF No. 4-1 at 57–61.[3] The two other merchants involved in the Porsche purchase are also based in Illinois. ECF No. 10-1 at 45–47.

### III.   DISCUSSION

Friedman moves for sanctions pursuant to 28 U.S.C. § 1927 and this Court's inherent sanction powers. He alleges that Brockman "engaged in bad faith litigation tactics . . . by multiplying proceedings, filing lawsuits making false statements of [Friedman's] citizenship, and attempting to evade" an arbitration and forum selection clause. ECF No. 10-1 at 18. Because Brockman effectively filed the same action twice, the Court also "may order the plaintiff to pay all or parts of the costs of that previous action." Fed. R. Civ. P. 41(d)(1). Courts "ordinarily should rely on the Rules rather than the[ir] inherent power" to issue sanctions. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

#### A.   28 U.S.C. § 1927

Section 1927 states that "[a]ny attorney or other person . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." To succeed on a Section 1927 sanctions claim, the moving party must establish that opposing counsel "acted 'recklessly or in bad faith.' " *United States v. Associated Convalescent Enters., Inc.*, 766 F.2d 1342, 1346 (9th Cir. 1985) (quoting *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983)).

Section 1927 "limits a federal court's ability to sanction an attorney for conduct before another court." *GriD Sys. Corp. v. John Fluke Mfg. Co.*, 41 F.3d 1318, 1319 (9th Cir. 1994). A "suit filed in state court is an entirely separate action, not subject to the

---

[3] Friedman's license and voter registration were made available to Brockman via Friedman's declaration in support of his motion to transfer venue in the earlier case. *See* ECF No. *2-1 at 55, 57.

sanctioning power of the district court [pursuant to Section 1927]." *Id.* If a state court action has been removed to federal court, Section 1927 allows sanctions only if the party unreasonably and vexatiously multiplied the proceedings while in the federal court. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, No. C 10-03718, 2011 WL 13373980, at *2 (N.D. Cal. Mar. 17, 2011) ("The issue becomes whether there is a basis for awarding attorney fees to Defendant based on Plaintiff's conduct after the case was removed."). *Id.*

Here, Brockman's actions in front of this Court do not warrant Section 1927 sanctions because the alleged "bad faith multiplication of proceeding[s]," i.e. Brockman filing a second complaint in state court after voluntarily dismissing the first complaint from this court, *see* ECF No. 10-1 at 21, occurred in *state* court. Aside from responding to Friedman's motion for sanctions, Brockman's only action before this Court has been to voluntarily dismiss the case. ECF No. 8; *see also* ECF No. *4 (notice of voluntary dismissal in Case No. 22-cv-2002). Friedman's request for sanctions pursuant to Section 1927 is therefore **DENIED**.

### B.   Rule 41(d)

Under Rule 41(d) this Court may consider Brockman's activity in front of "any court." Fed. R. Civ. P. 41(d)(1). Rule 41(d) states that "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court . . . may order the plaintiff to pay all or parts of the costs of that previous action." In the Ninth Circuit, "costs" within the context of Rule 41(d) "do not include attorney's fees as a matter of right." *Moskowitz v. Am. Sav. Bank, F.S.B.*, 37 F.4th 538, 546 (9th Cir. 2022).

Here, Brockman filed effectively the same action twice. Brockman disagreed with Friedman's decision to remove the first case to federal court and chose to voluntarily dismiss the case rather than move to remand it back to state court. ECF No. 12 at 12; *see* 28 U.S.C. § 1447(c) (providing procedure for remand). Because Brockman chose to again

voluntarily dismiss his complaint and has expressed the intention to file a third complaint in state court, *see* ECF No. 12 at 12, the Court hereby Orders that Brockman shall pay to Friedman the $402.00 filing fee that Friedman paid in order to remove the first complaint to federal court. *See* ECF No.*1; Fed. R. Civ. P. 41(d).

### C. The Court's Inherent Sanction Powers

Finally, courts retain an "inherent power to impose sanctions for . . . bad-faith conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). This discretionary power affords courts "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45. It includes the power to dismiss a lawsuit outright, assess attorney's fees, and impose relevant costs. *Id.* at 45. This discretion allows courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–631 (1962). But the inherent sanction power "must be exercised with restraint." *Chambers*, 501 U.S. at 44.

Generally, sanctions are available under a court's inherent powers "if the court specifically finds bad faith or conduct tantamount to bad faith. Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). An "improper purpose" would include "an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case." *Id.*

*Chambers* established a high threshold for issuing sanctions pursuant to the court's inherent powers. *See* 501 U.S. at 38–39. There, the Supreme Court affirmed the district court's imposition of "sanctions against [the defendant] in the form of attorney's fees and expenses totaling $996,644.65, which represented the entire amount of [the plaintiff's] litigation costs paid to its attorneys." *Id.* at 40. Defendant's conduct warranted sanctions because of his attempts, despite court warnings and a finding that he acted in contempt of

the court, "to deprive the [c]ourt of jurisdiction, fraud, misleading and lying to the [c]ourt." *Id.* at 42 (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 124 F.R.D. 120, 139 (W.D. La. 1989)). Specifically, the Defendant and his counsel "intentionally withheld information from the court," *id.* at 37, defied a preliminary injunction, *id.* at 38, filed "a series of meritless motions and pleadings," *id.* (quoting *Calcasieu*, 124 F.R.D. at 127), and acted in contravention of the court's judgment on the merits, *id.* at 39. The sanctions accounted for the fact that "the extraordinary amount of costs and expenses expended in [the] proceeding were caused . . . solely by the relentless, repeated fraudulent and brazenly unethical efforts of [the defendant]." *Id.* at 58 (quoting *Calcasieu*, 124 F.R.D. at 136).

Simple ignorance does not support a finding for sanctions. In *Barber v. Miller*, plaintiff's counsel filed a patent infringement lawsuit with the knowledge that the plaintiff no longer owned the patent at issue. 146 F.3d 707, 709 (9th Cir. 1998). Well-settled law established that only patent owners have standing to sue for patent infringement. *Id.* at 709–10. Opposing counsel first communicated this to plaintiff's counsel by phone, and then again stated it in a motion to dismiss. *Id.* at 709. Plaintiff's counsel then filed an amended complaint that the court dismissed because of the standing issue that defense counsel had raised "since the beginning of the litigation." *Id.* After declining to find that the plaintiff acted recklessly or in bad faith, the district court awarded the defendant $2,500 in sanctions under Rule 11. *Id.* The Ninth Circuit reversed the Rule 11 sanctions award, but affirmed the denial of sanctions under the court's inherent powers because even though the case "certainly show[ed] ignorance or negligence on the part of [plaintiff, it did] not compel a finding that he was reckless or acted in bad faith." *Id.* at 711.

Here, the facts do not support a finding for sanctions pursuant to this Court's inherent powers. Friedman is correct that, as noted above, Brockman appears to have misunderstood the relevant subject matter jurisdiction considerations and procedures. ECF No. 13 at 9; *see Mollan v. Torrance*, 22 U.S. 537 (1824) ("[T]he jurisdiction of the Court

depends upon the state of things at the time of the action brought."); *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) ("When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith. Similarly, when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." (citations omitted)). However, unlike the *Chambers* defendant, Brockman did not defy any court warnings, attempt to circumvent court orders, or engage in any behavior that constituted contempt of this Court.

Further, Brockman's jurisdictional arguments are premised upon Friedman's previous property ownership and connections with San Diego, California. ECF No. 12 at 10. They are therefore not frivolous given the operative question is "whether a complaint states an arguable claim—not whether the pleader is correct in his perception of the law." *Hudson v. Moore Buus. Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir. 1987). Brockman also does not appear to have harassed Friedman given, at this stage, all Brockman has done is file two lawsuits and two voluntary dismissals—the second of which constitutes an adjudication on the merits. ECF No. 9; Fed. R. Civ. P. 41(a)(1)(B). As in *Barber*, Brockman appears to have shown an "ignorance" of the law, but nothing that "compel[s] a finding that he was reckless or acted in bad faith." 146 F.3d at 711.

Friedman's request for sanctions under the Court's inherent powers is therefore **DENIED**.

## III.   CONCLUSION

Brockman's two lawsuits and two voluntary dismissals ultimately resulted in an adjudication on the merits. The Court concludes that sanctions are not appropriate under either Section 1927 or the Court's inherent powers. For the foregoing reasons, the Court **DENIES** Friedman's Motion for Sanctions but awards $402.00 in costs to Friedman,

against Brockman, for the cost of removing the first action to federal court under Federal Rule of Civil Procedure 41(d).

**IT IS SO ORDERED.**

Dated: April 28, 2023

Hon. Gonzalo P. Curiel
United States District Judge